**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: MURRAY L. DEUTCHMAN,
<u>Debtor.</u>

MURRAY L. DEUTCHMAN,

No. 98-2029

<u>Debtor-Appellant,</u>

v.

INTERNAL REVENUE,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, District Judge.
(CA-98-841-DKC, BK-94-10500-BK, AP-96-1335-DK)

Argued: March 2, 1999

Decided: September 21, 1999

Before LUTTIG, MOTZ, and TRAXLER, Circuit Judges.

_____

Affirmed by published opinion. Judge Traxler wrote the opinion, in
which Judge Luttig and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** Andrew Martin Croll, SCARLETT & CROLL, P.A., Bal-
timore, Maryland, for Appellant. Thomas James Sawyer, Tax Divi-
sion, UNITED STATES DEPARTMENT OF JUSTICE, Washington,

D.C., for Appellee. **ON BRIEF:** Robert B. Scarlett, SCARLETT & CROLL, P.A., Baltimore, Maryland, for Appellant. Loretta C. Argrett, Assistant Attorney General, Gary D. Gray, Lynne A. Battaglia, United States Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

**OPINION**

TRAXLER, Circuit Judge:

This case involves the effect of a confirmed Chapter 13 plan on liens securing a creditor's claim. Specifically, a debtor appeals from an order of the district court affirming the bankruptcy court's determination that the completion of the payments due under his Chapter 13 plan would not extinguish liens on his property held by the Internal Revenue Service ("IRS"). We affirm.

I.

Murray L. Deutchman ("Deutchman") filed a voluntary petition for Chapter 13 bankruptcy on February 2, 1994. At the time, Deutchman owed over $190,000 in tax liabilities to the IRS, most of which were secured by liens on his property.

On April 28, 1994, Deutchman filed an amended Chapter 13 plan ("the plan"), which listed the IRS's liens but contained conflicting directions as to how the IRS's claim would be treated. Specifically, the plan did not list the IRS as a secured creditor, which the plan defined as "[t]he owners of secured indebtedness holding debts, demands or claims, of whatever character, for which the owners have a security interest." Rather, it listed the majority of the IRS's secured claim as a Class II "Priority Claim," which, under the plan's definition, consisted of unsecured claims entitled to priority to the extent allowed by 11 U.S.C.A. § 507(a)(8) (West Supp. 1999).**1** The plan also provided that the liens of such Class II creditors "shall be consid-

_____

**1** The plan itself referred to 11 U.S.C.A. § 507(a)(7) (West 1993), which was subsequently recodified at § 507(a)(8).

2

ered released and of no effect" upon the payment of all "Allowed Claims" due them. The remainder of the IRS's secured claim was listed as a Class III claim, which consisted of unsecured dischargeable claims.

Additionally, although initially seeming to require payment "in full" of $172,000 of the IRS's claim, the plan substantially discounted this amount, asserting that approximately $117,000 of the Class II debt was not entitled to priority under § 507 because those amounts represented debts that had become due more than three years prior to the filing of the bankruptcy petition. See 11 U.S.C.A. § 507(a)(8)(A)(i). Hence, the plan apparently mandated payment of only $35,667.31 "to satisfy, in full, the Debtor's joint obligation, he holds with his wife, to the [IRS]. . . ."

Two weeks after Deutchman filed the plan, the IRS filed a proof of claim on behalf of the United States in the amount of $190,876.94, the majority of which, $172,579.15, was listed as secured debt, with the remainder, $18,297.79, listed as unsecured. Deutchman did not object to the IRS's proof of claim.

Pursuant to a notice sent to all creditors, including the IRS, a confirmation hearing on the plan was thereafter held before the bankruptcy court. Although provided with a copy of the plan, the IRS did not attend the confirmation hearing nor otherwise object to confirmation of the plan. The bankruptcy court confirmed Deutchman's reorganization plan, and no appeal was taken.

Following confirmation, Deutchman began making payments to the IRS under the plan. Two years later, however, Deutchman, in an effort to refinance his property, pledged to pay all remaining amounts owed to the IRS under the plan if the IRS would agree to release its liens on his property. The IRS refused to release the liens, and additionally asserted that Deutchman's payment of the reduced amounts called for by the plan could not extinguish the liens.

Deutchman then brought this action, seeking a declaratory judgment that the IRS's liens would be extinguished upon completion of payments due under the plan. The bankruptcy court granted partial summary judgment to the IRS, leaving open the question of the value

3

of the IRS's secured claim. The parties later agreed that the amount of the IRS's remaining secured claim was $139,750.89. The district court affirmed; Deutchman appeals.

II.

We review the district court's decision by applying the same standard of review that it applied to the bankruptcy court's decision. See Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Properties Ltd. Partnership), 99 F.3d 151, 154 (4th Cir. 1996). That is, we review findings of fact for clear error and conclusions of law de novo. See id.; Canal Corp. v. Finnman (In re Johnson), 960 F.2d 396, 399 (4th Cir. 1992).

A.

We begin with an overview of the Chapter 13 bankruptcy process as it relates to the events underlying this matter. Section 501 of the Bankruptcy Code governs the filing of proofs of claims or interests by creditors. See 11 U.S.C.A. § 501 (West 1993). If proof of a claim or interest is filed by a creditor and is not objected to, the claim or interest is "deemed allowed." See 11 U.S.C.A. § 502(a) (West 1993) ("A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest. . . objects."). Because Deutchman did not object to the IRS's proof of claim, the IRS held an allowed secured claim in the amount of $172,579.15.

The Chapter 13 debtor must file a plan, see 11 U.S.C.A. § 1321 (West 1993), the contents of which are specified under 11 U.S.C.A. § 1322 (West 1993 & Supp. 1999). All interested parties must be notified of the requisite court hearing to confirm the plan, at which time any "party in interest may object to confirmation of the plan." See 11 U.S.C.A. § 1324 (West 1993). In the instant case, the IRS neither appeared at the confirmation hearing nor objected to the confirmation of Deutchman's plan.

The impact of a confirmed plan on the parties involved in the Chapter 13 reorganization is governed by 11 U.S.C.A.§ 1327 (West 1993), which provides:

4

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan .

Id. (emphasis added). Relying on this section of the Bankruptcy Code, Deutchman contends that, despite the fact that the IRS held an allowed secured claim in the amount of $172,579.15, his confirmed Chapter 13 plan is now res judicata as to the issues before us. Accordingly, Deutchman seeks a declaration that the property subject to the IRS's liens will vest in him free and clear of the liens upon payment of the substantially reduced amounts called for by the plan. We disagree.

B.

As a general rule, liens pass through the bankruptcy process unaffected. See Cen-Pen Corp. v. Hanson, 58 F.3d 89, 92 (4th Cir. 1995). This is because "[a] bankruptcy discharge extinguishes only in personam claims against the debtor(s), but generally has no effect on an in rem claim against the debtor's property." Id. In order to extinguish or modify a lien, the debtor must take some affirmative step toward that end. As we have observed in the past,"[u]nless the debtor takes appropriate affirmative action to avoid a security interest in property of the estate, that property will remain subject to the security interest following confirmation." Id.

In the instant case, Deutchman did not take a sufficient affirmative step to modify or extinguish the IRS's liens. First, if we assume that Deutchman intended to challenge the validity or existence of the

5

IRS's liens, he failed to effectively do so because he sought no pre-confirmation adversary hearing. Second, Deutchman filed no objection to the proof of claim filed by the IRS, sought no valuation hearing pursuant to 11 U.S.C.A. § 506 (West 1993), nor otherwise attempted to modify the lien in any affirmative way. Instead, Deutchman attempted to "provide for" the liens and obtain a favorable result by merely camouflaging his treatment of the IRS's liens in his plan.**2** Obviously, this was not an appropriate affirmative step; and for the lack of an appropriate affirmative step his effort to avoid the lien fails.

C.

In so holding, we necessarily reject Deutchman's claim that, upon payment of the partial amount due the IRS under his plan, his property will nevertheless vest in him free and clear of the IRS's liens under § 1327(c) because his plan "provided for" the IRS's claims. Section 1327(c) does not define "provided for." However, in Rake v. Wade, 508 U.S. 464 (1993), the Supreme Court defined "provided for," as used in 11 U.S.C.A. § 1325(a)(5)(West 1993), as "to make a provision for or stipulate to something in a plan," Rake, 508 U.S. at 473 (internal quotation marks omitted), and, as used in 11 U.S.C.A. § 1328(a)(West 1993), as "makes provision for, deals with, or even refers to a claim," Rake, 508 U.S. at 474 (internal quotation marks omitted). This court, in Cen-Pen, held that,"[a]s a general matter, a plan `provides for' a claim or interest [under§ 1327(c)] when it acknowledges the claim or interest and makes explicit provision for its treatment." 58 F.3d at 94 (emphasis added). We also held that"`[e]ven where confirmed without objection, a plan will not eliminate a lien simply by failing or refusing to acknowledge it or by calling the creditor unsecured.'" Id. (quoting Beard, 112 B.R. at 954).

_____

**2** Deutchman has not satisfactorily explained the basis for reducing the IRS's secured claim, or for eliminating the presumably valid liens upon his property. There is no indication that he believed that the liens were invalid or that the claim was not legitimate. Nor is there any reason to believe that the property securing the claim was of insufficient value to secure any portion of the claim. Rather, it appears that Deutchman simply attempted to eliminate valid liens securing an unchallenged claim by calling the claim something that everyone agrees it was not -- a § 507 unsecured priority claim.

6

We adhere to this interpretation today. Although acknowledging that the IRS held valid liens against Deutchman's property, the plan nowhere acknowledged that the IRS's claims were allowed secured claims by virtue of these liens and Deutchman's failure to object to the IRS's proof of claim. Instead, the plan improperly characterized all of the IRS's claims as Priority II unsecured claims under § 507 and created additional confusion by setting forth an unclear payment schedule.

In <u>Cen-Pen</u>, we discouraged efforts by debtors to misrepresent the nature of their debts, and we made clear that such efforts could not provide a basis for avoiding liens. <u>See id.</u> at 94. We therefore hold that, in order to "provide for" a creditor for purposes of § 1327(c), the plan must, at a minimum, clearly and accurately characterize the creditor's claim throughout the plan. Accordingly, Deutchman's plan did not "provide for" the allowed secured claim of the IRS because the plan did not consistently identify any IRS claim as a <u>secured</u> claim. Such lack of clarity could only mislead both the secured creditor and the bankruptcy court, as well as cause improper treatment of the secured claims in the confirmed plan, and we will not condone it.

D.

Another fatal consequence of Deutchman's plan was its failure to give specific notice to the IRS of Deutchman's intent to accord the liens less than full protection. <u>See Piedmont Trust Bank v. Linkous (In re Linkous)</u>, 990 F.2d 160, 162-63 (4th Cir. 1993). <u>Linkous</u> involved a debtor who had failed to provide a secured creditor with information of the debtor's intent to have the secured claims reevaluated under § 506(a) by the bankruptcy judge at the upcoming confirmation hearing. We held that the lack of adequate notice alone denied the secured creditor due process and that, accordingly, the confirmation order devaluing the claims would not be given preclusive effect. <u>See id.</u> at 163. The same result obtains here. Deceptive information is equivalent to no notice at all, and for lack of specific notice, Deutchman's efforts fail.

7

III.

Accordingly, the judgment of the district court holding that completion of the payments called for under the terms of the confirmed plan could not extinguish the liens is affirmed.

AFFIRMED

8