**IN RE: Mark C. BARNES, Debtor**

**Case Number 14–11079**

United States Bankruptcy Court, S.D. Georgia, Augusta Division.

Signed March 17, 2015

---

Zane P. Leiden, Leiden & Leiden, Augusta, GA, for Debtor.

## ORDER

SUSAN D. BARRETT, CHIEF UNITED STATES BANKRUPTCY JUDGE

Before the Court is an Objection to Confirmation filed by the Chapter 13 Trustee ("Trustee") arguing that the chapter 13 plan submitted by Mark C. Barnes ("Debtor") does not satisfy 11 U.S.C. § 1325(b)(1) because it fails to propose to pay interest on Debtor's allowed general unsecured claims and Debtor is not committing all of his disposable income into the plan. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L) and the Court has jurisdiction under 28 U.S.C. § 1334. For the following reasons, the Trustee's objection to confirmation is sustained.

### FINDINGS OF FACT

Debtor filed his chapter 13 bankruptcy petition on June 18, 2014. Debtor's chapter 13 plan proposes to pay $1,125.00 for 60 months and "a 100% dividend or a pro-rata share of $7,500.00, whichever is greater." Dckt. No. 4. According to Debtor's means test calculation, Debtor is an above median debtor with the applicable commitment period of 5 years and a monthly disposable income of $930.77. Dckt. No. 2. However, according to Debtor's schedule J, his current monthly net income is $2,102.87, well above his proposed monthly plan payment. Dckt. No. 1. Schedule I also includes a pro rated tax refund in the amount of $935.33 per month.

This matter involves two issues. The first issue is whether Debtor is proposing to contribute all of his projected disposable income into the plan. The second issue is whether Debtor must pay interest to his unsecured creditors when his plan proposes to pay a 100% dividend to his unsecured creditors over five years, but he fails to contribute all of his projected disposable income into the plan.

### CONCLUSIONS OF LAW

Section 1325(b)(1) provides:

(b)(1)  If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan

(A)  the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B)  the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1).  The section is in the disjunctive requiring a debtor to comply with either § 1325(b)(1)(A) or § 1325(b)(1)(B) to overcome an objection by the Trustee or an unsecured creditor. *Hamilton v. Lanning*, 560 U.S. 505, 508–09, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010)("If an unsecured creditor or the bankruptcy trustee objects to confirmation, § 1325(b)(1) requires the debtor *either* to pay unsecured creditors in full or to pay all 'projected disposable income' to be received by the debtor over the duration of the plan.")(emphasis added); *In re Sampson–Pack*, 2014 WL 1320371, at *2 (Bankr.D. Md. March 31, 2014)(same); *In re Bailey*, 2013 WL 6145819, at *1 (Bankr. E.D.Ky. Nov. 21, 2013) (same) (*quoting In re Jones*, 374 B.R. 469, 469 (Bankr.D.N.H. 2007)); *In re Winn*, 469 B.R. 628, 630 (Bankr.W.D.N.C.2012) ("Only one of the prongs [of § 1325(b)(1) ] need be met, not both.").

The Trustee contends Debtor's plan does not satisfy 11 U.S.C. § 1325(b)(1)(A) because the language "as of the effective date of the plan-the value of the property to be distributed" requires a present value determination which requires Debtor to pay interest on allowed unsecured claims. *See In re Hight–Goodspeed*, 486 B.R. 462, 464 (Bankr.N.D.Ind.2012).  The Trustee also argues Debtor's plan fails to satisfy subsection (B) because the Debtor is not proposing to pay all of his projected disposable income into his plan for the applicable commitment period.[1]

Conversely, Debtor contends he has satisfied both prongs of § 1325(b)(1).  First, he claims he has satisfied § 1325(b)(1)(B) because his projected tax refund should not be included in the Trustee's calculation of his projected disposable income.  With the tax refund properly excluded, Debtor argues he is devoting all of his disposable income to the plan and therefore his proposal satisfies § 1325(b)(1)(B).  Second, Debtor argues § 1325 (b)(1)(A) does not require him to pay interest therefore his plan is confirmable under § 1325(b)(1)(A). *11 U.S.C. § 1325 (b)(1)(B).*

■  The Bankruptcy Code defines the term "disposable income" to mean:

current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

(A)(i)  for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and

---

**1.**  At the hearing, the Trustee conceded that Debtor's proposed plan complied with all the other provisions of 11 U.S.C. § 1325, including the best interests requirement of § 1325(a)(4) as well as the good faith requirement of § 1325(a)(3) and therefore those provisions need not be addressed in this opinion.

(ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b)(2). Current monthly income:

(A) *means the average monthly income from all sources that the debtor receives* ... without regard to whether such income is taxable income ... and

.

.

.

(B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but *excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.*

11 U.S.C. § 101(10A)(emphasis added). The Bankruptcy Code expressly excludes specific items from the definition of current monthly income, and tax refunds are not among the excluded items. In addition, tax refunds are a product of a debtor's wages and are generally property of the bankruptcy estate included in a debtor's projected disposable income. *See In re Cook,* 2013 WL 5574978 (Bankr. N.D.Ala. Oct. 10, 2013) (full tax refund is disposable income that must be turned over to the trustee); *In re Murchek,* 479 B.R. 521 (Bankr.N.D.Iowa 2012)(future tax refunds are disposable income); *In re Myles,* 2006 WL 6591834 (Bankr.N.D.Ga. March 9, 2006)(same); *In re Abner,* 234 B.R. 825 (Bankr.M.D.Ala.1999)(same).

This refund money would unquestionably be included in Debtor's projected disposable income if Debtor did not voluntarily elect to overwithhold. *See generally, In re Hale,* 2007 WL 2990760, at *2 (Bankr. N.D.Ohio Oct. 10, 2007) ("income tax withholding is not the same as actual tax liability, and can be manipulated by taxpayers to produce excess withholding and a refund"); *In re Rhein,* 73 B.R. 285, 288 (Bankr.E.D.Mich.1987) (sustaining an objection to confirmation where debtor had not committed her tax refund into the plan but rather had created a "virtual savings account through the vehicle of overwithholding of income from her wages"); *see also In re Lawson,* 361 B.R. 215, 223, n. 24 (Bankr.D.Utah 2007) ("The Internal Revenue Service would not allow taxpayers to effectively retain a savings account through overwithholding while accepting less than full payment on tax liabilities owed, nor will this Court permit debtors to manipulate their tax withholdings to understate their income."). Given the nature of Debtor's tax refund, I find the refund is included within Debtor's projected disposable income and therefore Debtor's plan fails to satisfy § 1325(b)(1)(B). *See Hamilton v. Lanning,* 560 U.S. at 524, 130 S.Ct. 2464 ("the court may account for changes in the debtor's income or expenses that are known or virtually certain at the time of confirmation.").

*11 U.S.C. § 1325 (b)(1)(A).*

■ Next, Debtor argues § 1325(b)(1)(A) does not require interest to be paid in 100% dividend cases where debtors propose to devote less than all of their projected disposable income into the plan. By paying less than all of his projected disposable income into the plan each month, Debtor proposes to extend the length of his chapter 13 plan to the fullest term allowed by the Bankruptcy Code, 5 years.

There is a split of authority among bankruptcy courts and treatises as to whether interest is required in these circumstances. *Compare In re Hight–Goodspeed,* 486 B.R. at 465 (requiring the payment of interest); *In re McKenzie,* 516 B.R. 661 (Bankr.M.D.Ga.2014)(interest required); *In re Sampson–Pack,* 2014 WL 1320371, at *3–4 (Bankr.D.Md. March 31, 2014) (interest required); *In re Rhein,* 73 B.R. 285, 287 (Bankr.E.D.Mich.1987)(interest required); 7 *Norton Bankr.L. & Prac.* § 151:19 (3d ed.2015)(interest required); Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy,* § 168.1, at ¶ 6, (4th ed.), Sec. Rev. June 7, 2004, www.Ch 13online.com (interest required); *with In re Richall,* 470 B.R. 245, 249 (Bankr.D.N.H.2012)(interest is not required); *In re Stewart–Harrel,* 443 B.R. 219, 222–24 (Bankr.N.D.Ga.2011)(interest is not required); *In re Ross,* 375 B.R. 437, 444 (Bankr.N.D.Ill.2007)(same); *In re Eaton,* 130 B.R. 74, 77–78 (Bankr.S.D.Iowa 1991)(same); 8 Alan N. Resnick and Henry J. Sommer *Collier on Bankruptcy,* ¶ (1325.11[3], 1325–56 (16th ed.2013)(same).

The split turns on the interpretation of the words "the effective date of the plan" when placed before the word "value", instead of after it. In other sections of the Code, the phrase "as of the effective date of the plan" appears after the word "value" and has consistently been interpreted to require interest to be paid. *See Till v. SCS Credit Corp.,* 541 U.S. 465, 474, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004)(discussing § 1325(a)(5)(B)(ii)); *Assocs. Commercial Corp. v. Rash,* 520 U.S. 953, 957, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997) (discussing § 1325(a)(5)(B)(ii)); *Rake v. Wade,* 508 U.S. 464, 469–70, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993) (discussing § 1325(a)(5)(B)(ii)); *United Sav. Ass'n of Texas,* 484 U.S. 365, 377, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (discussing § 1129(b)(2)(A)(i)(II)). As stated in *Till,* "the Bankruptcy Code includes numerous provisions that, like the cramdown provision, require a court to 'discoun[t] ... [a] stream of deferred payments back to the[ir] present dollar value,' to ensure that a creditor receives at least the value of its claim." *Till,* 541 U.S. at 474, 124 S.Ct. 1951 (*quoting Rake v. Wade,* 508 U.S. 464, 472, n. 8, 113 S.Ct. 2187).

The word placement is slightly different in § 1325(b)(1)(A) where the phrase "as of the effective date" appears. before the words "the value," rather than after. The court in *Stewart–Harrel* examined this word order and concluded the phrase "as of the effective date of the plan" must apply to both § 1325(a)(1)(A) and § 1325(b)(1)(B). *Id.* "Reading the phrase 'as of the effective date of the plan' to require the present value of distributions on the claims may make sense with respect to subsection (A) but would make no sense with respect to subsection (B)." *In re Stewart–Harrel,* 443 B.R. at 222. The *Stewart–Harrel* court concluded the only interpretation of "as of the effective date of plan" which would make sense in both § 1325(a)(1)(A) and § 1325(b)(1)(B) is for it to mean the date that the court is to make the applicable determinations for subsections (A) and (B). *Id.* at 223.

The *Stewart–Harrel* court also noted the Trustee's position creates an anomaly in the Bankruptcy Code because it would require the payment of interest on claims of general unsecured creditors under § 1325(b)(1)(A), but not on priority claims under § 1322 (a)(2). *Id.* at 223–24. "[Section] 1322(a)(2) allows for deferred payment of priority claims but clearly no interest payment is required there. If the payment of interest were required under 11 U.S.C. § 1325(b)(1), it would have the effect of unsecured creditors receiving more under a Chapter 13 plan than a priority creditor." *Id.* at 224. The court also noted 11 U.S.C. § 502 expressly disallows claims for unmatured interest and that 11 U.S.C. § 726 specifically requires the payment of interest. *Id.* The *Stewart–Harrel* court also concluded that the payment of interest is already subsumed by the best interest of creditors test set forth in 11 U.S.C. § 1325(a)(4) and that is where the issue belongs, not as an additional element of confirmation under § 1325(b)(1). *Id.*

Conversely, the court in *In re McKenzie* disagreed with *Stewart–Harrel* and found the two phrases, "the value, as of the effective date of the plan, of property to be distributed ..." and "as of the effective date of the plan—the value of property to be distributed ..." to mean the same thing and both require a present value calculation. *In re McKenzie*, 516 B.R. at 664; *In re HightGoodspeed*, 486 B.R. at 465 ("In this court's opinion, the meaning of those words is not changed by relocating the phrase "as of the effective date of the plan."). The court explained, "[C]learly, the date of confirmation is the date at which the court must determine whether the requirements of subsection (A) or subsection (B) have been met ... [and] is the date the court must determine generally whether the requirements of confirmation have been met." *Id.* *citing Hamilton v.*

*Lanning,* 560 U.S. at 518, 130 S.Ct. 2464 (interpreting the "effective date of the plan" as the date the plan is confirmed); *see also United States v. Silva,* 443 F.3d 795, 797–98 (11th Cir.2006)("If the statute's meaning is plain and unambiguous, there is no need for further inquiry ... [a court] should not interpret a statute in a manner inconsistent with the plain language of the statute, unless doing so would lead to an absurd result.").

In addressing the *Stewart–Harrel* court's concern that requiring interest would produce anomalies such as requiring interest where the best interest of the creditor's test of § 1325(a)(4) would not and allowing interest to be paid to general unsecured creditors while priority claimants receive no interest, the *McKenzie* court acknowledged these anomalies, but explained, there is "nothing untoward in such a result, as interest represents the time value of money and the risk of default. As to the difference between priority and non-priority unsecured claims, the court attributes the disparate effect on successive amendments to the Bankruptcy Code which have created certain distortions." *Id.* (*quoting In re Braswell,* 2013 WL 3270752, at *3–4 (Bankr.D.Or. June 27, 2013)).

After considering the arguments, I agree with the conclusion reached by the courts holding that interest must be paid in these circumstances. The two phrases "value, as of the effective date of the plan" and "as of the effective date of the plan, the value" do not have different meanings in regards to this issue. "It seems that § 1325(b)(1)(A) is phrased somewhat differently because Congress apparently wanted the concept of the effective date of the plan to apply to both the valuation of the distribution under (A) and to the disposable income alternative of (B) and by putting the phrase into (b)(1) it was able to

say that once rather than twice." *In re Hight–Goodspeed,* 486 B.R. at 465. I find reading the language "effective date of the plan" language as the date of confirmation to be relevant to both subsection (A) and (B). As the Supreme Court stated in *Hamilton v. Lanning,* "§ 1325(b)(1) directs courts to determine projected disposable income 'as of the effective date of the plan,' which is the date on which plan is confirmed or becomes binding." *Hamilton v. Lanning.* 560 U.S. 505, 518, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010). In subsection (A), "as of the effective date of the plan" is the date the Court must determine the value of the property to be distributed. Under subsection (B), "as of the effective date of the plan," is the date the Court must determine if the debtor is devoting all of his disposable income into the plan.

While the Trustee's interpretation may allow an unsecured creditor to receive interest while a priority claimant does not; and may require interest payments where the best interest of creditors of § 1325(a)(4) would not, these purported anomalies are not sufficient to overcome the plain language of the statute. First, the best interest of the creditors test of § 1325 (a)(4) is a separate, independent confirmation requirement from § 1325(b)(1). *See In re Hale,* 65 B.R. 893, 895 (Bankr.S.D.Ga.1986) ("Section 1325(b)(1) is an exception to Section 1325(a)(1–6) which sets forth the criteria which, if found to exist, require the court to confirm a plan. That is, a plan which meets the tests for mandatory confirmation, including "good faith" still cannot be confirmed, if after objection, the disposable earnings test is not met."). As set forth in *Till,* interest represents the time value of money, inflation, and the risk of default. *Till,* 541 U.S. at 466, 124 S.Ct. 1951. When a debtor chooses to pay less than all of his disposable income into his plan, his repayment plan gets extended as well, so

requiring interest in such circumstances is not an absurd result. *Till,* 541 U.S. at 474, 124 S.Ct. 1951; *In re Hight–Goodspeed,* 486 B.R. at 465. ("Since interest represents the time value of money and compensation for the risk of default, ... the court sees nothing untoward with such a result."). Requiring interest is the price a debtor pays for choosing to devote less than all of his projected disposable income into the plan. *In re Hight–Goodspeed,* 486 B.R. at 465 ("[I]f a debtor would prefer to have a more flexible or less rigorous budget it may choose to devote less than all of its disposable income to the plan; but the price for doing so, and thereby paying unsecured creditors over a longer period of time, is that they must be paid in full with interest.").

Second, the purported anomaly that a priority claimant may receive less in a chapter 13 than a general unsecured creditor may be due, as stated in *Hight–Goodspeed,* to successive amendments to the Bankruptcy Code that created the distortion. "Much like barnacles on the bottom of a boat, that disparity seems to be the consequence of the accretions that have grown up on the Bankruptcy Code since 1978, spoiling the clean lines and carefully crafted features it originally had. The resulting distortion suggests that Congress was so focused on solving one problem— the degree of effort that could reasonably be expected of a debtor—that it neglected to smoothly integrate the new provisions of the statute with those that were already there." *In re Hight–Goodspeed,* 486 B.R. at 465; *see also Olden v. LaFarge Corp.,* 383 F.3d 495, 506 (6th Cir.2004) (the court "will not ignore the plain, unambiguous language of a statute where it achieves its intended purpose without any absurd result but simply has additional unintended consequences."). In addition, there also is no real evidence this is an unintended con-

sequence. Customarily, priority claims are paid in full before general unsecured claims are paid. The requirement to pay interest to general unsecured claims arguably is designed to account for the time value of money for this extended delay and potentially greater risk· of non-payment. *See* 11 U.S.C. §§ 507, 1322(a)(2), and 1326(b). In the chapter 13 context this is an unusual situation where a debtor has the ability to pay a 100% dividend in less than 5 years, but opts to pay over the full statutorily allowed period. It is not an absurd result for Congress to require interest payments to general unsecured creditors in such event.

The Court also disagrees with Debtor's assertion that the Trustee's interpretation is irreconcilable with 11 U.S.C. § 1322(b)(10) which allows interest to be paid on nondischargeable unsecured claims and 11 U.S.C. § 502 which expressly disallows claims to be asserted for unmatured interest. Section 1322(b)(10) is a discretionary provision where a plan "may" include a provision to pay interest on nondischargeable unsecured debts if debtor agrees to pay all claims in full and has the disposable income to pay such interest. In such circumstances, 11 U.S.C. § 1322(b)(10) is still relevant because when such a debtor is seeking confirmation under § 1325(b)(1)(B), and commits all of his disposable income into the plan, then the debtor may opt to pay post-petition inter-·est on § 1322(b)(10) claims, without paying interest on all other unsecured claims. *See generally, In re Brown,* 500 B.R. 255 (Bankr.S.D.Ga.2013). Furthermore, the general language of 11 U.S.C. § 502, disallowing claims for unmatured interest and other statutory provisions expressly allow-

ing/disallowing interest, cannot overcome the plain language of § 1325(b)(1)(A), where Congress inserted statutory language requiring interest to be paid. *See Till v. SCS Credit Corp.,* 541 U.S. at 469, 124 S.Ct. 1951.

Lastly, Debtor argues § 1325(b)(4) requires Debtor to be in bankruptcy for the duration of the applicable commitment period of 5 years and therefore, he is not required to pay interest. I disagree. The applicable commitment period of 5 years is determined based upon a Debtor's means test calculation of disposable income and only 11 U.S.C. § 1325(b)(1)(B) requires a calculation of projected disposable income to be received in the applicable commitment period. There is no reference to disposable income or applicable commitment period in § 1325(b)(1)(A). *See In re McKenzie,* 516 B.R. at 664 n. 1 ("that section [1325(b)(4)(B) ] only applies if the debtor is paying all of his projected disposable income to unsecured creditors pursuant to section 1325(b)(1)(B). It does not apply where the debtor is relying on section 1325(b)(1)(A).").

For the foregoing reasons, the Trustee's Objection to Confirmation is SUSTAINED and confirmation is ORDERED DENIED. Debtor shall file an Amended Plan consistent with this order within twenty-one (21) days of entry of this order or the case will be dismissed without further notice or hearing.